UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TEDDY LEWIS,

                                        Plaintiff,

                                                                DECISION AND ORDER

                                                                05-CV-6432L

              v.

A. ZON, et al.,

                                        Defendants.

_____

        Plaintiff, an inmate in the custody of the New York State Department of Correctional

Services ("DOCS"), brings this action against DOCS and approximately fifty of its officials and

employees (collectively "defendants") pursuant to 42 U.S.C. §1983 and the Religious Land Use and

Institutionalized Persons Act, 42 U.S.C. §2000cc et seq. ("RLUIPA").  Plaintiff claims that during

his incarceration at Upstate Correctional Facility ("Upstate"), Downstate Correctional Facility,

Wende Correctional Facility ("Wende"), and Auburn Correctional Facility ("Auburn"), he was

denied certain religious accommodations, was compelled to accept a non-kosher diet, was compelled

to participate in kosher diet fast days, and was denied adequate medical care, all in violation of

constitutional and statutory law. [1]

---

[1]  Plaintiff also claims that the defendants failed to adequately process a grievance.
However, plaintiff does not oppose the portion of defendants' summary judgment motion seeking
to dismiss that claim, and in any event, failure to properly investigate or rectify inmate grievances
does not provide a basis for liability under Section 1983.  *See Pine v. Seally*, 2011 U.S. Dist.
LEXIS 23482 at *29-*30 (N.D.N.Y. 2011) ("[t]he law is well-settled that inmates do not have a
constitutional right to grievance procedures").  That claim is accordingly dismissed.

Plaintiff now moves for summary judgment pursuant to Fed. R. Civ. Proc. 56, and defendants cross move to dismiss the complaint pursuant to Fed. R. Civ. Proc. 12, and/or for summary judgment.

For the reasons set forth below, the defendants' cross motion to dismiss and/or for summary judgment (Dkt. #170) is granted in part and denied in part, and plaintiff's motion for summary judgment (Dkt. #167) is denied.

## DISCUSSION

### I.    Standard on a Motion for Summary Judgment

Rule 56(c) provides that a moving party is entitled to summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### II.    Plaintiff's Claims Against the Defendants in Their Official Capacities

The plaintiff alleges claims under Section 1983 and RLUIPA against the defendants in both their individual and official capacities, and seeks money damages.  However, it is well-settled that absent waiver by the State or valid congressional override, such claims against state defendants in their official capacities for money damages are barred by the Eleventh Amendment. *See* U.S. Const.

amend. XI;  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Sommer v. City of Suffolk*, 306 Fed.

Appx. 660, 662 (2d Cir. 2009).  *See Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011); *Hall v. Ekpe*,

428 Fed. Appx. 93, 94 (2d Cir. 2011).  To the extent plaintiff seeks money damages against the

defendants in their official capacities, those claims are barred.

## III.    Plaintiff's First Amendment Free Exercise/RLUIPA Claims

Plaintiff claims that his religious freedoms under the First Amendment and RLUIPA were

violated by two DOCS policies: a requirement that the plastic wrap covering plaintiff's kosher meals

be removed before they were served during his incarceration in Wende's Special Housing Unit

("SHU"), and the prohibition against attending congregational religious services that conflict with

legitimate penological objectives, which resulted in plaintiff's inability to attend certain services

when he was housed in the SHU at Upstate and other facilities.

In order to make out a claim under the First Amendment's free exercise clause or the

RLUIPA, a plaintiff must initially demonstrate that his sincerely held religious beliefs have been

"substantially burdened" by defendants' conduct – specifically, that the government's action

pressured him to commit an act forbidden by his religion, or prevented him from engaging in conduct

or experiences mandated by his faith.  *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006).

Once plaintiff has established such a burden, the defendants are required to identify legitimate

penological interests that justify the impinging conduct, and were the actual reason therefor.  The

ultimate burden, however, remains with the plaintiff, who must then demonstrate that the articulated

concerns were irrational.

In determining whether the burden imposed by the defendants is reasonable or irrational, "a

court evaluates four factors: (1) whether the action had a valid, rational connection to a legitimate

governmental objective; (2) whether the prisoner has an alternative means of exercising the burdened

right; (3) the impact on guards, inmates, and prison resources of accommodating the right; and (4)

the existence of alternative means of facilitating the plaintiff's exercise of the right that have only

- 3 -

a *de minimis* adverse effect on valid penological interests." *Smith v. Artus*, 2010 U.S. Dist. LEXIS 104660 at *37-*38 (N.D.N.Y. 2010) (internal quotations and brackets omitted).

With regard to his kosher food claim, plaintiff contends that the Wende prison administrator's policy of requiring corrections officers to uncover and inspect meals being served in the SHU is unconstitutional, because it didn't permit plaintiff to verify for himself that the inspecting officers were not "tampering" with his meals. As a result, plaintiff claims that he was compelled to endure a 24-day hunger strike, and forego ceremonial fast-breaking on two religious holidays. He also claims that during transport and layovers between facilities, and prior to the approval of his application for kosher meals by Upstate's Jewish Chaplain, he was denied kosher meals, and conversely, was later forced to participate in Jewish holy day fasting periods that he had not planned to observe.

A Jewish inmate's right to receive kosher meals is well settled. However, with regard to plaintiff's allegation that his meals were uncovered and inspected before they were served to him in SHU, plaintiff offers no evidence to show that the practice of inspecting the meals placed any substantial burden on plaintiff's free exercise of his faith. Specifically, plaintiff makes no attempt to show that the manner in which the meals were uncovered and inspected rendered them, or was likely to render them, non-kosher. Rather, he claims that "[b]ecause my food was unwrapped and inspected outside of my presence, *I could not be sure* that the food was not tampered with." (Dkt. #167-2 at ¶15) (emphasis added). Plaintiff thus reasons that by failing to provide him with covered kosher meals instead of uncovered ones, defendants engaged in the functional equivalent of denying him kosher meals altogether.

Plaintiff offers no case law in support of such a proposition, nor does the Court find that the SHU's meal inspection requirement could, in the absence of any evidence that plaintiff's meals were actually subjected to tampering that might jeopardize their kosher character, reasonably be found to have placed a "substantial burden" on plaintiff's exercise of his faith. *See generally Reeder v. Hogan*, 2012 U.S. Dist. LEXIS 134710 at *58 (N.D.N.Y. 2012) (conclusory claims of food

deprivation, based on plaintiff's unsubstantiated belief that corrections officers tampered with his meals and rendered them inedible, are insufficient to survive summary judgment).

Nonetheless, recognizing that it is the sincerity of plaintiff's beliefs and not their objective reasonableness that is relevant to an establishment clause claim, the Court will assume *arguendo* that plaintiff's religious exercise was substantially burdened by the SHU's policy of inspecting meals for dangerous items. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "an individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious," regardless of whether the belief is unorthodox, irrational or even demonstrably false) (internal quotation marks omitted). Applying the relevant factors, I find that the undisputed facts establish that the policy was reasonable. The inspection requirement applied equally to meals of every character, had the clearly legitimate objective of ensuring that contraband and other potentially dangerous items (defendants offer the example of tin can lids) were not introduced into the SHU, and was, on its face, narrowly tailored for that purpose. The only alternative means of performing the inspection that plaintiff suggests – inspecting the meals in the inmate's presence – would unduly frustrate that objective by requiring sharp or otherwise dangerous items to be transported into SHU, and potentially within the reach of inmates, before they could be discovered or removed through inspection. Plaintiff's free exercise and RLUIPA claim arising out of Wende's SHU meal inspection policy is therefore dismissed.

Plaintiff also claims that on occasion, he did not receive kosher meals during transfers between facilities. However, it is well settled that the periodic or temporary denial of religious meals does not constitute "substantial" interference with free exercise, and is insufficient to establish a First Amendment claim. *See Walker v. Fischer*, 2012 U.S. Dist. LEXIS 40846 at *38 (N.D.N.Y. 2012) ("[a]bsent a pattern more clearly reflecting a calculated, deliberate infringement . . . on more than an isolated, *de minimis* basis," deprivation of religious meals on two occasions does not give rise to a First Amendment claim); *Tafari v. Annetts*, 2008 U.S. Dist. LEXIS 77015 at *3 (S.D.N.Y. 2008)

(adopting Magistrate's Report and Recommendation concluding that denial of two kosher meals is a "*de minimi*, not a substantial" interference with a prisoner's free religious exercise); *Odom v. Dixion*, 2008 U.S. Dist. LEXIS 11748 at *31-*35 (W.D.N.Y. 2008) (failure to provide kosher meals on 7 occasions over several days is insufficiently substantial to establish a First Amendment claim).

Concerning plaintiff's inability to attend or host congregate services while confined in Upstate's SHU, it is well-established that the enforcement of DOCS policies which restrict inmates in SHU from attending congregate religious services "is rationally related to a valid penological interest and is the least restrictive means of serving that interest." *Smith v. Artus*, 2010 U.S. Dist. LEXIS 104660 at *70-*71 (N.D.N.Y. 2010).

Plaintiff's First Amendment and RLUIPA claims concerning the service or denial of kosher meals are dismissed.

## IV.    Plaintiff's First Amendment Establishment Clause Claims

Plaintiff claims that his constitutional rights were violated when, on three occasions, he was "forced" to participate in Jewish holy day fasts at Upstate, despite the fact that he requested meals from defendants Haug and Boucaud, explaining that he had been prescribed medications which had to be taken with food.

Initially, the Court admits the facially incongruous nature of plaintiff's claim: having voluntarily requested and applied to be enrolled in a dietary plan with a menu and schedule that accommodates his religious beliefs in a manner guaranteed by the First Amendment's free exercise clause, plaintiff now complains that by approving his request and enforcing his participation in that plan, the defendants "coerced" him into engaging in Jewish dietary practices, in violation of the establishment clause.  This claim perfectly illustrates the "unique area of tension between the establishment clause and the free exercise clause of the First Amendment" that is presented by the prison context. *United States v. Kahane*, 396 F. Supp. 687, 698 (2d Cir. 1975), *modified by* 527 F.2d 492 (2d Cir. 1975).

Courts examining Establishment clause issues use a three-pronged test set forth by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971), designed to honor the "clearest command of the Establishment Clause . . . that one religious denomination cannot be officially preferred over another." *Skoros v. City of New York*, 437 F.3d 1, 39 (2d Cir. 2006). The *Lemon* test requires the Court to consider: (1) whether the government action in question has a secular purpose; (2) whether the primary effect of the action, as seen by a reasonable observer, "neither advances nor inhibits religion," and (3) whether the action fosters "excessive government entanglement with religion." *Lemon*, 403 U.S. 602 at 612-13. *See Cardew v. Bellnier*, 2010 U.S. Dist. LEXIS 143515 at *44-*46 (N.D.N.Y. 2010).

Because plaintiff is a prisoner challenging DOCS action, the *Lemon* test is tempered by the test laid out by the Supreme Court in *Turner v. Safley*, which held that a prison policy that impinges on an inmate's constitutional rights is nevertheless valid "if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89-90 (1987). The four relevant factors, discussed hereinbefore above, are: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right in question that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards, other inmates, and/or the allocation of prison resources generally; and (4) whether there are reasonable alternatives available to the prison authorities. *Id.*

Initially, I find that the offering of religious meal plans to inmates who demonstrate entitlement thereto accomplishes the secular and legitimate penological interests of feeding the inmates and ensuring adequately-planned, organized and orderly food service within the prison, while simultaneously preserving the inmates' First Amendment free exercise freedoms by tailoring the content, frequency and schedule of their meals to accommodate their religious beliefs. I further find that consistent and uniform implementation of such dietary plans, where they have been "opted

into" by inmates, is the best and narrowest means of accomplishing those dual goals, while making the most efficient use of prison resources.

To the extent that the *Lemon* factors might remain instructive even in the context of a prisoner claim, I also note that the practice of fasting does not advance or inhibit religion, or foster excessive government entanglement therewith. While fasting is employed by a number of diverse religious faiths for varying purposes, it is not an inherently religious practice, nor is it strongly identified with any one particular faith (or non-belief) over another. *See Cardew*, 2010 U.S. Dist. LEXIS 143515 at *39-*50 (N.D.N.Y. 2010) (granting defendants' Fed. R. Civ. Proc. 12(c) motion to dismiss inmate's claim that prison's service of non-red meat meals on Fridays compelled non-Catholic inmates to observe Catholic religious customs, reasoning that, "[t]he fact that some religions are required to eat certain foods or to abstain from eating certain foods on specific days does not render those foods 'religious' if they are otherwise acceptable under another person's belief system. Under the dubious logic of plaintiff's First Amendment challenge to DOC menu practices, non-Jews and non-Muslims would be unconstitutionally forced to participate in a 'religious dietary ritual' – abstaining from pork – every time DOCS did not serve pork as part of a meal"). I therefore find that the undisputed facts do not give rise to an Establishment Clause violation.

While the occasional refusal to provide plaintiff with food on religious fast days may not raise Establishment Clause concerns, the Court notes that allegations of food deprivation may also be characterized as an Eighth Amendment claim. "While no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). "To establish a valid claim that the denial of food . . . constitutes an Eighth Amendment violation, one must establish that there was a 'sufficiently serious condition' that resulted from the food not being received." *Evans v. Albany County Corr. Facility*, 2009 U.S. Dist. LEXIS 40630 at *38 (N.D.N.Y. 2009). A condition is serious for constitutional purposes if it presents "a condition of urgency that may result in degeneration or

extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

Here, plaintiff claims that he was refused food during Jewish holy day fast days on July 7, 2004, July 27, 2004 and for part of the day on September 24, 2004.  He claims that as a result, he was unable to take certain medications in the manner directed by the prescriber (e.g., with food) on the first two occasions, and was delayed in receiving food to take with his medications on the third. However, plaintiff neither alleges nor offers any evidence that he was unable to take the medications, or that he experienced any pain, discomfort, or medical problems as a result of not taking them, or not taking them with food.  The undisputed facts simply do not suggest that plaintiff suffered an urgent condition risking degeneration or extreme pain.

Accordingly, plaintiff's claims concerning his participation in Jewish fast days are dismissed.

## V.      Plaintiff's Eighth Amendment Claim Alleging Denial of Medical Care

Plaintiff also claims that he was denied adequate medical care, and claims that he was not monitored on a daily basis during a self-imposed hunger strike.

The relevant law on such claims is well settled.  In order to demonstrate that medical treatment amounts to "cruel or unusual punishment" prohibited by the Eighth Amendment, a plaintiff must prove that a physician's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A "serious medical need" is one which presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998), *quoting Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000).

In determining whether a serious medical need exists, the Court examines several factors, including whether the plaintiff has "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143

F.3d 698 at 702.  However, "[a]n assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment." *Livingston v. Goord*, 225 F.Supp.2d 321, 329 (W.D.N.Y. 2002).

In assessing whether a care provider displayed "deliberate indifference," the Court's analysis includes both an objective and a subjective prong.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).  With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights.  With respect to the subjective component, the court must consider whether the deprivation was effected by defendants in wanton disregard of those rights.  *Id.*  Thus, to establish deliberate indifference, a plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain.  *See Wilson*, 501 U.S. at 299; *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992).

Mere negligence, or even medical malpractice, is not actionable.  *See Estelle*, 429 U.S. at 106.  Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance*, 143 F.3d 698 at 703.

Here, plaintiff first claims that he received inadequate treatment relative to a twenty-four-day self-imposed hunger strike, during which he refused to eat the meals that were provided to him by defendants during his incarceration in SHU.

Plaintiff offers no evidence that any of the defendants were deliberately indifferent to his medical needs during the strike.  Initially, "[t]he fact that plaintiff risked undermining his health by conducting a voluntary hunger strike undercuts his claim of deliberate indifference to serious medical needs."  *Brown v. Graham*, 2010 U.S. Dist. LEXIS 144188 at *49 n.31 (N.D.N.Y. 2010).  *See also Green v. Phillips*, 2006 U.S. Dist. LEXIS 14960 at *14 (S.D.N.Y. 2006).  Moreover, even to the extent that plaintiff's hunger strike could be considered less than voluntary, in that it was allegedly precipitated by his belief that his kosher meals might have been "tampered with" when they were

- 10 -

uncovered and inspected by the defendants, plaintiff offers no evidence that his serious medical needs were neglected during that time, or that any act or omission by the defendants exposed him to a serious risk of harm.

To the contrary, plaintiff's March 2004 health records demonstrate that after the hunger strike began, plaintiff was monitored on an approximately daily basis by medical staff. (Dkt. #170-3, Exh. A). Although plaintiff complains that his vital signs were not taken daily, and disputes defendants' contention that the only reason they were not taken daily is because plaintiff refused treatment on some days, there is no evidence of record which suggests that any harm or serious risk was imposed thereby, or, more significantly, that plaintiff was ever denied access to the nourishment and hydration necessary to treat his symptoms.  In fact, plaintiff was provided with regular meals throughout the hunger strike, and was transported to the hospital emergency room for treatment when he complained of chest pains.  *See Brown v. Graham*, 2010 U.S. Dist. LEXIS 144188 at *48-*49 (N.D.N.Y. 2010) (granting summary judgment to defendants on deliberate indifference claims by inmate on hunger strike, where inmate was frequently monitored for symptoms, and where plaintiff identifies no inadequacies in his medical care).   His regularly-prescribed medications continued to be refilled and provided to him, and plaintiff did not suffer any significant weight loss, with his weight variously reported to be 195 pounds (March 18, 2004, two weeks into the hunger strike), 195 pounds on March 23, 2004, and 196 pounds on March 28, 2004, after resuming eating.[2]  (Dkt. #170-3, Exh. A).  Accordingly, plaintiff has failed to set forth sufficient evidence by which a reasonable jury might conclude that his serious medical needs were ignored during his hunger strike, and his claims of denial of medical care during that period are dismissed.

---

[2]  Plaintiff claims that in providing him with medical care during his hunger strike, defendants failed to follow DOCS Directive 4309 and certain "hunger strike provisions" of DOCS's Health Services Policy Manual.  However, plaintiff offers no evidence concerning the contents of those materials, which do not appear to be publicly accessible.  In any event, plaintiff offers no evidence that the care he received (or did not receive) during his hunger strike exposed him to a condition of urgency.

Plaintiff also asserts a deliberate indifference to medical needs claim related to the period after his hunger strike ended.  Plaintiff testified that immediately after he ended the strike and began to eat again, he suffered painful regurgitation, abdominal cramps, headaches and diarrhea.  On or about March 26, 2004, after unsuccessfully attempting to ingest two meals, plaintiff testified that he asked defendant Wende Corrections Officer R. Sindoni for an emergency sick call.  Plaintiff states that Sindoni refused that request, telling plaintiff that he (Sindoni) was angry because he had lost one hundred dollars in a bet with coworkers concerning the duration of plaintiff's hunger strike.  As a result of Sindoni's refusal to summon an emergency sick call, plaintiff's symptoms continued untreated for the next two days.  (Dkt. #167-2 at ¶¶44-48; Dkt. #170-3, Exh. A at 141).  Given that plaintiff complained of vomiting and severe pain, was known by Sindoni to be in a uniquely fragile physical state because he had not ingested food for the twenty-four days prior, and that Sindoni's refusal may have been motivated by the desire to "punish" plaintiff for making him lose a bet, by subjecting plaintiff to unnecessary pain and discomfort (an allegation defendant Sindoni denies), I find that at the very least, there is a question of fact concerning whether the plaintiff was unconstitutionally denied medical treatment at Wende by defendant Sindoni on or about March 26, 2004.

Finally, plaintiff contends that on one occasion during the hunger strike, certain officers refused to immediately request fresh bedding from the medical department after plaintiff soiled his, forcing plaintiff to spend the remainder of the night in soiled bedding.  Viewed as a deliberate indifference to medical needs claim, plaintiff's having to forego fresh bedding for a few hours does not, under the undisputed circumstances presented, appear to have presented any "serious medical" situation requiring treatment, as opposed to a merely unpleasant and uncomfortable one.

While plaintiff's bedding allegations might be alternatively viewed as an Eighth Amendment "conditions of confinement" claim, it is well settled that a temporary delay in providing clean bedding – or even the failure to provide any bedding at all, for a period of time less than one full day in duration – does not rise to the level of a constitutional violation.  *See Alexander v. Deming*, 2009

U.S. Dist. LEXIS 32434 at *16-*17 (W.D.N.Y. 2009) (dismissing Eighth Amendment claim concerning deprivation of sheets and a mattress for 12-13 hours, because a deprivation of that length "does not constitute an 'unquestioned and serious deprivation [] of basic human needs'") (*quoting U.S. v. Brennan*, 511 U.S. 825, 837 (1994)); *Jones v. Furman*, 2007 U.S. Dist. LEXIS 20336 at *36 (W.D.N.Y. 2007) (dismissing Eighth Amendment claim where inmate was forced to sleep on wet mattress in a dirty cell with no bedding for "less than one full day," because a delay of less than one full day's duration "renders the claim without merit").

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Dkt. #167) for summary judgment is denied, and defendants' cross motion for summary judgment (Dkt. #170) is granted in part and denied in part. Specifically, defendants' motion for summary judgment is granted with regard to all of plaintiff's claims against the individual defendants in their official capacities for money damages, and furthermore is granted with respect to the remainder of plaintiff's claims, except for plaintiff's claim concerning deliberate indifference to serious medical needs at Wende by defendant Sindoni on or about March 26, 2004 ("surviving claim"). Excepting that surviving Eighth Amendment claim, the remainder of the complaint is hereby dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 25, 2013.

- 13 -